UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

EAS GROUP, INC.,                                    Case No. 14-MC-0020 (PJS/TNL)

        Petitioner,

v.                                                                      ORDER

FIBERPOP SOLUTIONS, INC.,

        Respondent.

---

Daniel J. Supalla, BRIGGS AND MORGAN, P.A., for petitioner.

Timothy J. Peters and Matthew A. Helgemoe, PETERS LAW FIRM, PLC, for respondent.

Petitioner EAS Group, Inc. ("EAS") filed a petition seeking the provisional attachment of the Minnesota property of respondent FiberPop Solutions, Inc. ("FiberPop") as security for an anticipated award in an arbitration in California. The arbitration concerned a dispute over a share-purchase agreement. EAS alleged that FiberPop agreed to buy shares of EAS for hundreds of millions of dollars but never consummated the deal. FiberPop failed timely to respond to EAS's petition, and this matter is now before the Court on EAS's renewed motion for default judgment. For the reasons explained below, the Court denies the motion and dismisses EAS's petition.

I. BACKGROUND[1]

EAS is a Nevada corporation headquartered in San Diego, California, that offers software and cloud-computing services. ECF No. 1-1 at 3. FiberPop is a Minnesota corporation headquartered in Owatonna, Minnesota. FiberPop is apparently in the business of fiber-optic networks. *Id.*

EAS embarked on a multi-year plan to target and acquire other technology companies that provide "complementary" services. ECF No. 19 ¶¶ 3-4; ECF No. 19-1 at 17-20. To fund the acquisitions, EAS sought to sell a 20-percent stake in the company for $220 million. ECF No. 19 ¶ 5; ECF No. 19-1 at 20. EAS advertised that in ten years the 20-percent share would be worth an estimated $2 billion—better than a ninefold return on the initial investment. ECF No. 19-1 at 20.

On April 27, 2012, EAS and FiberPop entered into a "share purchase agreement" for FiberPop to buy 20 percent of EAS's equity for $220 million. ECF No. 1 ¶ 18; ECF No. 1-1 at 7. The agreement was signed by EAS's Chairman and CEO, Ian Grant-Smith, and by FiberPop's President, James Louks. ECF No. 1-1 at 10.[2] The agreement provided

---

[1]In light of FiberPop's default, the Court takes the allegations in EAS's petition as true. *See Marshall v. Baggett*, 616 F.3d 849, 852-53 (8th Cir. 2010); *Murray v. Lene*, 595 F.3d 868, 871 (8th Cir. 2010).

[2]FiberPop has made a tardy appearance and (implausibly) asserted that Louks's signature was forged. ECF No. 24 ¶ 11. But, again, the entry of default prevents FiberPop from challenging the factual allegations in EAS's petition. *See Marshall*, 616 F.3d at 852-53.

that any disputes would be decided by arbitration in California and according to

Nevada law.  *Id.* at 8.  Initially, FiberPop was to complete payment by the end of May

2012, but the deadline was pushed back to the third week of June.  *Id.* at 7, 11.

FiberPop did not pay by the third week of June.  ECF No. 1 ¶ 20.  For more than a

year after that, FiberPop repeatedly assured EAS that it would soon make the overdue

$220-million payment.  *Id.* ¶¶ 21-24.  FiberPop represented at various times that it

would soon complete "financing projects" and gain access to hundreds of millions of

dollars, that it had received "loan commitments" for billions of dollars, and that a loan

for nearly three-quarters of a billion dollars had been approved "pending transfer of

collateral."  *Id.*  Yet FiberPop never paid a dime to EAS.  (EAS alleges that it "learned

after the fact that FiberPop intended to pay EAS Group, in whole or in part, using

investment proceeds from a 'fictitious prime bank instrument trading program.'"  *Id.*

¶ 25.)

EAS demanded arbitration in California, alleging breach of contract on the

ground that FiberPop "fail[ed] to honor its payment obligations" and alleging

promissory fraud on the ground that FiberPop's representations "concerning its intent

and ability to honor the terms of the [agreement] . . . were false when made and made to

induce EAS to enter into the [agreement]."  ECF No. 1-1 at 4.

While the arbitration was pending, EAS filed a petition in this Court to provisionally attach FiberPop's property in Minnesota as security for an anticipated arbitration award in EAS's favor.  ECF No. 1.  The petition relies on Fed. R. Civ. P. 64 and Minn. Stat. § 572B.08.  *Id.* ¶¶ 8, 34.  When FiberPop did not respond within 21 days after being served with the petition, *see* Fed. R. Civ. P. 12(a)(1)(A)(i), EAS applied to the clerk for entry of default, *see* Fed. R. Civ. P. 55(a).  ECF No. 4.  The clerk entered default, and EAS moved for a default judgment under Fed. R. Civ. P. 55(b)(2).  ECF Nos. 6, 7. After a hearing, the Court denied the motion without prejudice and instructed EAS that, if it renewed its motion, it should provide additional information about its fraud claim against FiberPop and identify the specific property that it sought to attach.  ECF No. 13. After EAS filed a renewed motion, FiberPop broke its silence and appeared to oppose the motion and respond to the petition for attachment.  ECF Nos. 14, 21, 24, 25.

About three weeks after the hearing on EAS's renewed motion for default judgment, the arbitrator in California issued an award of nearly $1 million to EAS on its claim for breach of contract.  ECF No. 34.  The arbitrator denied relief on EAS's fraud claim.  ECF No. 34-1 at 6.

## II.  ANALYSIS

### A.  Mootness

EAS seeks attachment of FiberPop's assets under Fed. R. Civ. P. 64 and Minn. Stat. § 572B.08.  ECF No. 1 ¶ 8.  But these authorities allow for the provisional—that is, pre-judgment—attachment of property.  These authorities do not authorize attachment of property after a judgment or arbitration award[3] has been entered.

Rule 64(a) of the Federal Rules of Civil Procedure provides that "[a]t the commencement of and throughout an action, every remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the *potential* judgment." (emphasis added).  Rule 64(a) thus addresses provisional, pre-judgment remedies.  *United States v. Overlie*, 730 F.2d 1159, 1161 (8th Cir. 1984) ("Rule 64 deals only with provisional remedies."); 11A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice and Procedure* § 2931 (3d ed.

---

[3]Federal and Minnesota courts consider an arbitration award to be a "final judgment" for purposes of the doctrines of res judicata and collateral estoppel.  *See, e.g.*, *Manion v. Nagin*, 394 F.3d 1062, 1066-67 (8th Cir. 2005) ("An  arbitration award counts as a final judgment for collateral estoppel purposes."); *Aufderhar v. Data Dispatch, Inc.*, 452 N.W.2d 648, 651 (Minn. 1990) ("We, likewise, have afforded to an arbitration award finality as to both facts and the law . . . [and] acknowledged that arbitration is meant to be a final judgment . . . ." (citations and internal quotation marks omitted)).  The parties have not cited—and the Court has not found—any authority suggesting that arbitration awards should not be treated as judgments for purposes of Fed. R. Civ. P. 64 or Minn. Stat. § 572B.08.  That makes sense, given that after an arbitration award is entered, the prevailing party can simply collect that award; it no longer needs the protections afforded by Fed. R. Civ. P. 64 and Minn. Stat. § 572B.08.

2013) ("Rule 64 speaks to provisional remedies prior to judgment.  Other rules regulate remedies to enforce a judgment.").  Similarly, Minn. Stat. § 572B.08(b)—titled "Provisional remedies"—provides that "[a]fter an arbitrator is appointed and is authorized and able to act, a party to an arbitration proceeding may move the court for a *provisional* remedy [under certain circumstances] . . . ." (emphasis added).

Because the California arbitration has concluded with the entry of an award in favor of EAS, any relief that this Court might grant EAS would not be provisional—that is, it would not precede an anticipated arbitration award.  Thus, the Court is not authorized by either Fed. R. Civ. P. 64 or Minn. Stat. § 572B.08 to grant the relief that EAS seeks.  For that reason alone, EAS's petition for attachment is dismissed.

## B.  Intentional Fraud

There is a second problem with EAS's petition.  Even if the California arbitration was ongoing, EAS would be entitled to provisional attachment of FiberPop's assets under Minnesota law only if it could demonstrate both (1) "the probability of success on the merits" of one of the claims being arbitrated and (2) "the existence of at least one of the grounds stated in section 570.02."  Minn. Stat. § 570.026 subd. 3.  EAS has always been able to demonstrate a "probability of success on the merits" of its contract claim against FiberPop—and, indeed, EAS has now prevailed on that claim in the arbitration.

But EAS has never been able to demonstrate "facts that show the existence of at least one of the grounds stated in section 570.02."

The specific ground stated in § 570.02 on which EAS relies is "when the respondent has committed an intentional fraud giving rise to the claim upon which the civil action is brought."  Minn. Stat. § 570.02 subd. 1(4).  Thus, EAS must demonstrate that FiberPop committed fraud, and that FiberPop's fraud "g[ave] rise to" one of the two claims that was arbitrated.  Again, one of those claims was for breach of contract, and the other was for fraud for inducing EAS to enter into the contract.  ECF No. 1-1 at 4.  Obviously, then, for any fraud to have "giv[en] rise to" one of those claims, the fraud must have occurred before the contract was entered (in the case of the fraud claim) or breached (in the case of the contract claim).

But almost all of the evidence of "fraud" cited by EAS is evidence of statements or conduct that occurred *after* the parties entered into the share-purchase agreement and *after* FiberPop breached that agreement.  EAS complains that, "[a]fter the third week in June came and went, FiberPop repeatedly represented that it could, and would, pay EAS Group as set forth in the [agreement]."  EAS has never been able to explain, though, how statements made *after* FiberPop breached the contract "g[ave] rise to" either of the claims asserted in the arbitration.

EAS does cite a couple of statements that were made by FiberPop *before* the share-purchase agreement was breached and thus could theoretically have given rise to the claims asserted in the arbitration.  Specifically, EAS alleges that "[i]n an email communication in April 2012, FiberPop represented to EAS Group that it had several 'financing projects,' which would lead to a total funding commitment of $9.5 billion.  FiberPop said it could pay EAS Group by the 'third week of May.'"  ECF No. 1 ¶ 19.  EAS also submitted a transcript of testimony given by Grant-Smith (EAS's chairman and CEO) in the California arbitration.  When asked whether Louks (FiberPop's president) made any representation to him about FiberPop's ability to pay, Grant-Smith testified that Louks "was very confident in the—in the relationship with EAS Group and his ability to invest."  ECF No. 31-2 at 39:18-40:1.  When asked whether Louks represented that "FiberPop had at its disposal funds to invest," Grant-Smith said that Louks explained to him that "[t]hey were raising money."  *Id.* at 40:2-11.

Under Minnesota law, a plaintiff cannot establish fraudulent misrepresentation unless it demonstrates (among other things) that "there was a false representation by a party of a past or existing material fact susceptible of knowledge."  *Hoyt Props., Inc. v. Prod. Res. Grp., L.L.C.*, 736 N.W.2d 313, 318 (Minn. 2007) (quoting *Specialized Tours, Inc. v. Hagen*, 392 N.W.2d 520, 532 (Minn. 1986)).  The alleged statements cited by EAS do not concern "a past or existing material fact."  *Hoyt Props., Inc.*, 736 N.W.2d at 318.  Instead,

they are promises or predictions about future events.  The Minnesota Supreme Court

has explained:

> It is a well-settled rule that a representation or expectation as
> to future acts is not a sufficient basis to support an action for
> fraud merely because the represented act or event did not
> take place.  It is true that a misrepresentation of a present
> intention could amount to fraud.  However, it must be made
> affirmatively to appear that the promisor had no intention to
> perform at the time the promise was made.

*Valspar Refinish, Inc. v. Gaylord's, Inc.*, 764 N.W.2d 359, 368-69 (Minn. 2009) (quoting

*Vandeputte v. Soderholm*, 216 N.W.2d 144, 147 (Minn. 1974)).[4]

EAS has alleged that FiberPop made promises that it did not keep—in particular,

a promise that FiberPop would pay $220 million to EAS by the end of May and then a

promise that FiberPop would make the payment by the third week of June.[5]  But

nothing in the record establishes that EAS did not intend to fulfill those promises at the

---

[4]It is true that the Minnesota Supreme Court has also recognized "that
predictions could be fraudulent if they failed to reflect past or present facts."  *Berg v.
Xerxes-Southdale Office Bldg. Co.*, 290 N.W.2d 612 (Minn. 1980).  But EAS has never
identified an intentionally fraudulent prediction that related to FiberPop's past or
current finances and that FiberPop made before the contract was breached.

[5]EAS's breach of its promise does not amount to a separate tort, because
Minnesota law does not recognize a tort claim for a breach of a contractually imposed
duty (absent an independent duty imposed by law).  *See Glorvigen v. Cirrus Design Corp.*,
816 N.W.2d 572, 584 (Minn. 2012).

time that those promises were made.[6]  This is not terribly surprising, as FiberPop had

no reason to make promises that it had no intention of fulfilling.  FiberPop stood to gain

nothing by deceiving EAS, since FiberPop would acquire the EAS shares only after it

delivered the money to EAS.  Neither the Court—nor EAS when pressed at oral

argument—could identify an incentive for FiberPop to lie about its intention to raise the

money to fund the stock purchase.

EAS nonetheless asserts that Minnesota law recognizes fraud claims when the

defendant "had an insufficient basis for making the representation" and asks the Court

to infer that a reasonable person in FiberPop's position should have known that it

would not be able to pay.  ECF No. 16 at 11-14.  EAS is essentially asking the Court to

find fraud on a theory of negligence.  But the attachment statute requires "*intentional*

fraud," not negligent misrepresentation.  Minn. Stat. § 570.02 subd. 1(4) (emphasis

added).  Minnesota courts clearly distinguish between "intentional fraud" and

"negligent misrepresentation": "[A] distinction exists between the two theories.  A

negligent misrepresentation is made when the misrepresenter fails to discover or

communicate certain information that an ordinary person would have discovered or

---

[6]The Court notes that, although the arbitrator was ruling on a different claim (promissory fraud, rather than intentional fraud) under a different state's law (Nevada law, rather than Minnesota law), the arbitrator similarly concluded that "there is no evidence that Mr. Louks did not have a reasonable belief that the funding to Fiber Pop from outside sources was forthcoming."  ECF No. 34-1 at 6.  The arbitrator accordingly denied EAS relief on its promissory-fraud claim.  *Id.*

communicated.  Fraudulent or intentional misrepresentation, in contrast, requires

dishonesty or bad faith."  *Kuipers v. R.L. Hexum & Assocs., Inc.*, Nos. C3-90-2293, C2-90-

2320, 1991 WL 126655, at *1 (Minn. Ct. App. July 16, 1991) (citing *Florenzano v. Olson*, 387

N.W.2d 168 (Minn. 1986)); *see also In re Simitar Entertainment, Inc.*, 275 B.R. 331, 348

(Bankr. D. Minn. 2002) (applying Minnesota law).  Again, EAS has not demonstrated

that FiberPop was intentionally dishonest or acted in subjective bad faith before

breaching the contract.

In sum, EAS is not entitled to the provisional attachment of FiberPop's assets

because EAS has not demonstrated that FiberPop "committed an intentional fraud

giving rise to" one of the claims that were arbitrated in California.  Minn. Stat. § 570.02

subd. 1(4).  Thus, even if that arbitration were still pending, the Court would deny

EAS's motion for a default judgment and dismiss its petition.[7]

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein,

IT IS HEREBY ORDERED THAT:

1.      EAS's renewed motion for default judgment [ECF No. 14] is DENIED.

2.      EAS's petition for an order of attachment [ECF No. 1] is DISMISSED.

---

[7]At oral argument, FiberPop asked the Court to set aside the entry of default. *See* Fed. R. Civ. P. 55(c).  FiberPop's request is now moot, as the Court is denying EAS's motion for default judgment and dismissing its petition.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated:  June 11, 2015                                  s/Patrick J. Schiltz
                                                       Patrick J. Schiltz
                                                       United States District Judge